# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**ANTONIO X. JACKSON,**
       Petitioner,

    v.                                             Case No. 14-C-1359

**GARY BOUGHTON, Warden,**
**Wisconsin Secure Program Facility,**
       Respondent.
_____

## DECISION AND ORDER

Following a jury trial, Antonio Jackson was convicted of one count of attempted first-degree intentional homicide. He was sentenced to twenty years of initial confinement and five years of extended supervision. In this decision and order, I address his petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

In 2010, D'Chario Oates was shot twice, once in the knee and once near his elbow. The shooting happened at a park in Racine, Wisconsin. No one other than Oates witnessed the shooting. Just before the shooting, Oates saw a gray or silver Pontiac car drive around the block a couple of times and then stop. The driver got out of the car and called Oates over. As Oates approached the car, the driver pulled out a revolver and fired two or three shots, hitting Oates in the knee and the elbow. The shooter fled the scene. Eventually, Antonio Jackson was charged with the crime. Following a jury trial, he was convicted.

In the present case, Jackson contends that he is entitled to habeas relief because his trial counsel was ineffective. Jackson contends that his counsel made three prejudicial errors during the trial: (1) failing to object to Oates' testimony that some

1

of his friends told him that his description of the shooter sounded like Jackson; (2) failing to object to the admission of an .40 caliber gun magazine that the police found during a search of Jackson's residence; and (3) failing to object to the prosecutor's mentioning an Arkansas police report that supposedly described Jackson as hiding in his bedroom when the police came to arrest him.

Jackson originally raised his ineffective-assistance claim in a postconviction motion that he filed in the state trial court. The trial court held a hearing on the motion, at which Jackson's trial counsel testified. *See State v. Machner*, 92 Wis. 2d 797 (1979). Following the hearing, the trial court denied Jackson's motion. Jackson then proceeded with his direct appeal, in which he raised the same ineffective-assistance claim. The Wisconsin Court of Appeals affirmed Jackson's conviction, and the Wisconsin Supreme Court denied review.

## II. DISCUSSION

To establish a claim for ineffective assistance of trial counsel, a petitioner must show that his lawyer performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). To establish deficient performance, a petitioner must demonstrate that his lawyer's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice, a petitioner must show that there is a reasonable probability that but for his lawyer's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

2

The Wisconsin Court of Appeals adjudicated Jackson's ineffective-assistance claim on the merits, and therefore I may grant relief only if the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). However, the Wisconsin Court of Appeals did not address both prongs of the *Strickland* standard (i.e., deficient performance and prejudice) for each of the alleged errors. Rather, it addressed only one prong of the standard for each alleged error. For the claim involving Oates' testimony about what his friends had told him, the court found that counsel's failure to object was not deficient performance, and it did not address whether the failure to object was prejudicial. For the claims involving the gun magazine and the Arkansas police report, the court did not address whether counsel's failures to object constituted deficient performance; instead, the court found that the failures did not result in prejudice.

When a state court decides an ineffective-assistance claim against the defendant on only one prong of the *Strickland* analysis, the undecided prong is not subject to the standard of review in 28 U.S.C. § 2254(d). *Rompilla v. Beard*, 545 U.S. 374, 390 (2005). Instead, that part of the claim is reviewed de novo. *Id.* Thus, my review of the state court decision could vary depending on the prong of the *Strickland* analysis at issue. However, as discussed below, I conclude that the Wisconsin Court of Appeals did not unreasonably apply *Strickland* in deciding Jackson's ineffective-assistance claim on the prongs that it addressed. For this reason, I will not discuss the prongs that are subject to de novo review.

## A. Evidence of Conversations with Friends

After he was shot, Oates was taken to the hospital. Just before he went into surgery, the police interviewed him. During the interview, Oates told the police that he did not recognize the shooter. However, he described the shooter as a dark-skinned black male between the ages of twenty-one and twenty-four, approximately 5'3'" to 5'5" in height, and weighing around 135 to 145 pounds. Oates stated that the shooter had gold teeth and was wearing a black hooded sweatshirt and black saggy jeans with shorts underneath. He described the shooter's car as a model year 2000 or 2002 silver Pontiac Grand Prix.

Later, the police interviewed Oates a second time. Oates reiterated that he did not know who shot him. In this interview, Oates described the shooter's clothing as he had in the first interview, and he also reiterated that the shooter had gold teeth. However, Oates changed his description of the shooter's height and weight slightly. He said that the shooter's height was between 5'5" and 5'7" and that his weight was between 140 and 160 pounds. He also said that the shooter drove a Pontiac Grand Am, when in the first interview he had said that the shooter drove a Pontiac Grand Prix.

The day after the shooting, Oates described the shooter and the shooter's car to some of his friends. At trial, Oates testified that "everybody" he talked to said that Antonio Jackson and his car matched the descriptions. Jackson's trial counsel did not object to this testimony. Oates further testified that, after talking to his friends, he contacted the police and told an officer that he believed the name of the shooter was Antonio Jackson. The officer then put together a photo lineup for Oates to review. Oates identified Jackson as the shooter.

4

At trial, Oates testified that, contrary to what he had told police in his initial interviews, in fact he did recognize Jackson at the time of the shooting. Oates testified that he had met Jackson once before the shooting, at a friend's house, and that he had also seen Jackson's car before. Oates testified that as he was sitting in the park before the shooting, he recognized Jackson's car as it circled the park. However, Oates only knew Jackson's street name and did not know that his real name was Antonio Jackson. Oates testified that when Jackson called him over to the car, he thought he was going to ask to use Oates' phone or for a cigarette.

At the postconviction hearing, trial counsel explained that she did not object to Oates's testimony concerning his conversations with his friends because she thought that the testimony was consistent with her defense theory, which was that Oates had misidentified Jackson as the shooter. At trial, counsel pointed out to the jury that Oates initially told police that he did not recognize the shooter, and that he was able to provide the police with Jackson's name only after he spoke with others who thought that Jackson fit Oates' description. Counsel argued that, together with all of the other inconsistencies in Oates' testimony and prior statements, this suggested that Oates did not really know who shot him and that he gave the police Jackson's name only because others had told him that Jackson fit Oates' description. Then, when Oates identified Jackson in the photo lineup, he did so not because he recognized him as the shooter, but because he recognized him from their prior meeting at a friend's house. Both the trial court and the Wisconsin Court of Appeals concluded that trial counsel's approach was reasonable.

Jackson argues that trial counsel's failure to object was clearly deficient because the testimony, which was inadmissible hearsay, corroborated Oates' already shaky

5

identification of Jackson as the shooter. I disagree. First of all, it is hard to describe Oates' self-serving testimony about what others had told him as "corroborating" his own identification. Oates could not even remember how he described the shooter to his friends, and thus his testimony that his friends said that Jackson fit whatever description he might have given them was not very persuasive. Moreover, it is arguable that the evidence actually helped Jackson's defense by suggesting that Oates' identification was based on what his friends had told him, rather than on his own recollection of the shooting, and thus was unreliable. Accordingly, trial counsel's failure to object to the testimony was reasonable.

In any event, even if I could reasonably conclude that trial counsel's failure to object was deficient performance, I could not also conclude that the Wisconsin Court of Appeals unreasonably applied *Strickland* when it concluded that counsel's failure to object was part of a reasonable trial strategy. Therefore, the court's decision must be upheld under § 2254(d)'s deferential standard of review.

**B. Gun Magazine**

Following Oates' identification of Jackson, the police searched Jackson's residence. A silver Grand Am was parked in the driveway of the residence, but Jackson was not there. When the police searched Jackson's bedroom, they found a wallet containing Jackson's identification, and they found an ammunition magazine for a .40 caliber semiautomatic pistol near the wallet.

The evidence at trial established that Oates had been shot with a .38 or .357 caliber revolver, and thus it was undisputed that the .40 caliber gun magazine was not associated with the gun used in the shooting. However, one of the state's witnesses at trial was Jackson's ex-girlfriend, Malena Brown. During Jackson's counsel's cross-

examination of Brown, she asked whether Jackson often hid things from her. Brown said that he did not. Counsel then asked Brown whether she had ever known Jackson to own a gun. Again, Brown said no. On redirect, the prosecutor asked Brown whether she had ever been in Jackson's bedroom, and Brown said yes. The prosecutor then showed Brown the gun magazine and asked her if she had ever seen it in Jackson's bedroom. Again, Brown said no. Later in the trial, during the prosecutor's direct examination of one of the police officers who searched Jackson's bedroom, she established that the magazine had been found in Jackson's bedroom, next to his wallet. During this testimony, it was made clear that the magazine was not associated with the revolver used in the shooting.

In his postconviction motion and on direct appeal, Jackson argued that evidence of the gun magazine was irrelevant and prejudicial, and that his trial counsel was ineffective in failing to object to its admission. However, in making this argument, Jackson's postconviction and appellate counsel overlooked the fact that trial counsel had opened the door to the magazine's admission by asking Brown whether Jackson hid things from her and whether she ever saw him with a gun. Once Brown answered no to those questions, the magazine was relevant rebuttal evidence: it suggested that Jackson owned a .40 caliber pistol, and that therefore either Brown was lying when she said that she never saw Jackson with a gun or she was telling the truth but Jackson hid the gun from her. Thus, even if trial counsel had objected to the magazine, the trial court likely would have admitted it.[1] What postconviction counsel should have argued

---

[1] Jackson's trial counsel also forgot the circumstances that led to the magazine's admission. At the postconviction hearing, she testified that she thought she did not object to the magazine because she did not want to highlight it for the jury. Answer Ex. 12 at 36.

7

was that trial counsel performed deficiently by opening the door to the magazine's admissibility. But that argument was not raised during the postconviction hearing or on direct appeal. Instead, Jackson's postconviction and appellate counsel operated under the assumption that the prosecutor introduced the magazine in an effort to convince the jury that Jackson was a violent man with a bad character. In response to these arguments, the state did not point out that trial counsel had opened the door to the admission of the magazine. Rather, the state acknowledged that the magazine was "minimally relevant" and argued that its admission was not prejudicial. Answer Ex. 3 at 10.

Both the state trial court and the state court of appeals, like the parties, operated under the assumption that the prosecutor introduced the magazine not to impeach Jackson's girlfriend but to associate Jackson with firearms. Both courts concluded that even if trial counsel's failure to object under these circumstances was deficient performance, it was not prejudicial. The court of appeals reasoned as follows:

> It was made abundantly clear to the jury that the recovered gun magazine was unrelated to the shooting. Jackson denied ownership of the gun magazine and testified that he shared the bedroom with others. Jackson's claim that the admission of this evidence affected the trial's outcome is purely speculative.

*State v. Jackson*, 2012AP618-CR, slip op. ¶ 24 (Wis. Ct. App. April 3, 2013).

In the present case, the respondent argues that trial counsel's failure to object to the admission of the magazine could not have been deficient performance, given her door-opening questions to Jackson's girlfriend. Jackson, in turn, contends that the respondent is barred from making this argument because the state did not raise it

8

during Jackson's direct appeal.[2]  However, the respondent in this case, Warden Boughton, was not a party to the direct appeal, and Jackson cites no authority suggesting that the respondent to a § 2254 petition is precluded from raising arguments that the state may have forfeited during the petitioner's direct appeal.  Nonetheless, even if the respondent were precluded from raising this argument, Jackson's claim would still fail.  That is because, even if I assume that trial counsel performed deficiently in failing to object to the magazine's admission, I could not also conclude that the state court unreasonably applied *Strickland* in finding that the admission of the magazine was not prejudicial.  The court correctly noted that it was made clear during the trial that the magazine was unrelated to the gun used in the shooting and that the magazine was found in a bedroom that Jackson shared with others.  Even if the jury concluded that the magazine was Jackson's, that conclusion does not provide significant support for the further conclusion that Jackson shot Oates, as Jackson's possession of the magazine did not imply that Jackson also possessed the gun used to shoot Oates.  Moreover, Jackson's possession of an ammunition magazine would not have significantly undermined his character.

     Jackson also contends that the admission of the magazine was prejudicial because it impeached Brown's testimony that Jackson did not hide things from her and that she never saw Jackson with a gun.  However, as noted, once Brown gave this testimony, the magazine became admissible to impeach that very testimony.  Thus, had trial counsel performed flawlessly and objected to the magazine's admission, she could

---

[2] Jackson concedes that, in light of trial counsel's door-opening question, her failure to object to the magazine's admission could not have been deficient performance.  *See* Reply Br. at 5–6.  Jackson also concedes that "it is too late in the game to claim that trial counsel's door-opening question was ineffective."  *Id.* at 6.

9

not have also asked Brown whether she ever saw Jackson with a gun. It follows that if trial counsel performed deficiently in failing to object to the magazine's admission, the magazine's having impeached Brown's testimony cannot be considered a form of prejudice caused by counsel's deficient performance. Accordingly, the state court did not unreasonably apply *Strickland* in concluding that trial counsel's failure to object to the magazine was not prejudicial.

**C.     Questions About Jackson "Hiding" in Arkansas**

After Oates identified Jackson as the shooter, the police located him in Arkansas and arrested him there. At trial, Jackson testified that had gone to Arkansas to visit his grandmother and that, when he left Wisconsin, he wasn't aware that he was a suspect in a shooting. On cross-examination, the prosecutor asked Jackson why he was hiding in a back bedroom when the officers came to arrest him. Jackson answered by saying that he wasn't hiding, he was sleeping. Then the following exchange took place:

> Q.     So if a police report written by an officer in Little Rock, Arkansas says that the subject was found hiding in a back bedroom, that wouldn't be the case?
>
> A.     No, that wouldn't be the case. That was my room. It wasn't, it wasn't like a back, it wasn't no hiding area. I wasn't found under the bed or nothing like that. I was found sleeping in the bed that was provided for me to sleep in while my other family members, I mean, there was a lot of us in the house, and they all were sleeping in different rooms.

Answer Ex. 10 at 180–81. No police report from Arkansas was admitted into evidence at trial. Trial counsel did not object to the prosecutor's referring to the police report in her questioning. During closing arguments, the prosecutor mentioned the dispute over whether Jackson was found hiding in his bedroom or just sleeping there:

> You have Mr. Jackson heading out, going out of town, being in the state of Arkansas . . . . You have with either he went down there to visit his

10

> grandmother, he gave up on school, he gave up on the girl that he had up here, and went down to be with his grandma or that he was trying to run from the police. You have him hiding in a bedroom at his grandma's house versus him sleeping in the bedroom when the police come looking for him at his grandma's house in Arkansas.

*Id.* at 206.

Jackson contends that his trial counsel performed deficiently by failing to object to the prosecutor's suggestion that an Arkansas police report stated that Jackson was found hiding in a bedroom. The Wisconsin Court of Appeals assumed that trial counsel's failure to object to the prosecutor's question, which assumed a fact not in evidence, constituted deficient performance. However, the state court concluded that trial counsel's failure to object to this question did not result in prejudice. The court of appeals reasoned that because the trial court instructed the jury that the questions and closing arguments of counsel are not evidence, and the jury is presumed to follow its instructions, it was likely that the jury gave no weight to the prosecutor's suggestion that a police report stated that Jackson was found hiding in a bedroom.

In the present case, Jackson contends that the prosecutor's questions were prejudicial because they tended to undermine his credibility. That is, by first asking a question that prompted Jackson to deny that he had been found hiding in a bedroom, and then asking a follow-up question that implied that a police report stated that he had been found hiding in a bedroom, the prosecutor implied that Jackson's denial was a lie. While this may be true to some extent, it is hard to conclude that this series of questions seriously undermined Jackson's credibility. The difference between "hiding" in a bedroom and simply being found there is a matter of characterization. Even if Jackson had only been asleep in his bedroom when the police arrived, the police might nonetheless have characterized his presence in the bedroom as "hiding." Thus, the

11

police report, as represented by the prosecutor's question, was not necessarily inconsistent with Jackson's testimony and did not give rise to a strong inference that Jackson was lying. It is not as if Jackson had denied hiding in the bedroom and then the prosecutor asked him why a police report stated that he had been found under some blankets in the bedroom closet. While failing to object to this latter question might have given rise to prejudice, failing to object to the prosecutor's more benign question did not. At the very least, the state court's conclusion that counsel's failure to object did not give rise to prejudice was not unreasonable. Accordingly, the state court did not unreasonably apply *Strickland* in connection with this aspect of Jackson's ineffective-assistance claim.

**D.    Cumulative Effect of Alleged Errors**

Finally, Jackson argues that the cumulative effect of his trial counsel's errors amounted to prejudice under *Strickland*. Here, only two alleged errors are relevant—the failure to object to the magazine and the failure to object to the prosecutor's question about the Arkansas police report. The remaining alleged error—counsel's failing to object to Oates' testimony about his conversations with his friends—cannot be included in the cumulative-effect analysis because, as I have concluded, the state court did not unreasonably apply *Strickland* in determining that the failure to object to this testimony was not deficient.

The Wisconsin Court of Appeals considered whether the cumulative effect of the two relevant errors amounted to prejudice and concluded that it did not. *State v. Jackson*, 2012AP618-CR, slip. op. ¶ 27. This conclusion was reasonable. As discussed above, neither error was very harmful on its own. Combining the effect of the two alleged errors does not give rise to a reasonable probability that, had the errors not

12

occurred, the result of the proceeding would have been different. Accordingly, the state court did not unreasonably apply *Strickland* in concluding that the cumulative effect of counsel's alleged errors was not prejudicial.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Jackson's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge